IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TAWANA L. CARTER, | : | CIVIL ACTION NO. |
| | : | 1:15-CV-0410-MHC-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SELECT PORTFOLIO SERVICING, | : | |
| INC. and WELLS FARGO BANK, N.A. | : | |
| *as trustee for* Fremont Home Loan Trust | : | |
| 2005 RR3, Mortgage Backed | : | |
| Certificates, Series 2005 RR3, | : | **FINAL REPORT AND** |
| | : | **RECOMMENDATION ON A** |
| Defendants. | : | **MOTION TO DISMISS** |

Plaintiff, *pro se*, sues to avoid and/or set aside a foreclosure as to her residence, alleging various defects in the assignment of her security deed, and that she was denied the benefit of a mortgage modification she believes she should have been granted. Defendants Select Portfolio Servicing, Inc. ("Select") and Wells Fargo, N.A. ("Wells Fargo") now move to dismiss [6]. Plaintiff does not respond, indicating that the motion to dismiss is unopposed. *See* LR 7.1B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").

As explained below, the Court **RECOMMENDS** that Defendants' Motion to Dismiss [6] be **GRANTED** and that this case be **DISMISSED**, both because the

motion is unopposed, and because the Complaint fails to state any plausible claim for relief on the merits.

## I.     BACKGROUND

On January 9, 2015, Plaintiff filed this civil action, *pro se*, styled as a "Verified Petition and Motion for Specific Performance, Injunctive Relief, Request for Declaratory Judgment, Promissory Estoppel, Civil Conspiracy, Wrongful Attempted Sale Foreclosure," in Fulton County Superior Court. *See* Petition [1-1] at 10. The case relates to a residential mortgage loan Plaintiff obtained in 2005. *Id.* ¶ 4. Defendants removed the case to this Court on February 11, 2015, on the grounds of diversity jurisdiction. *See* Notice of Removal [1].[1]

According to the Complaint, an entity referred to as "Novastar," which was later acquired by Defendant Wells Fargo, made a "conscious decision to sustain their

---

[1] Defendants supplied specific allegations establishing that complete diversity of citizenship exists. Notice of Removal [1] ¶¶ 10-16. As to the amount-in-controversy, Plaintiff expressly demands $1,500,000 in actual, compensatory, and punitive damages. Petition [1-1] at 19. Plaintiff also seeks injunctive relief, among other things, permanently preventing foreclosure and enforcement of the security deed as to this property, which if granted would effectively vest herself with ownership of the property free and clear of the security interest. *Id.* at 14-16. This further supports the conclusion that the amount-in-controversy threshold is met, in combination with Defendants' allegations that the property value exceeds $270,000, and that the current unpaid balance on the mortgage loan exceeds $331,000. Notice of Removal [1] ¶¶ 20-23.

business by systemically and significantly reducing their underwriting standards to create increasingly complex, confusing and increasingly risky terms for their prospective borrowers." Petition [1-1] ¶ 14. Plaintiff, however, borrowed money from an entity referred to as "Fremont" in 2005, at an amount of $279,000, and at the "subprime predatory" rate of 8%, which the lender knew or should have known "she would never be able to repay." *Id.* Plaintiff alleges that "[t]here was a modification that was granted on March 15, 2009 by Bank of America which brought the payment down to $1,000 on a trial modification but the loan was never approved for a final modification." *Id.*

Plaintiff made six payments pursuant to the trial modification but then the trial modification was "suddenly denied." *Id.* ¶ 2. Plaintiff applied three more times for modifications from 2012 through 2015, each of which was denied. *Id.* Defendant Select Portfolio Servicing denied the last application on January 6, 2015, stating that it would rather foreclose than agree to a modification. *Id.* Plaintiff now sues to obtain "specific performance to get this modification." *Id.* ¶ 15. Plaintiff also states, based on her perusal of the real estate records in the Fulton County Superior Court Clerk's Offices, that she is "confused concerning the secured creditor, and entities who legally have an interest in her real property." *Id.* ¶ 3.

3

Plaintiff seeks declaratory and injunctive relief in a variety of overlapping counts, Counts One through Four, in which Plaintiff requests that the Court establish her right to specific performance of a permanent loan modification and/or declare Defendants' lack of legal right or standing to foreclose, and/or set aside any foreclosure that has occurred. In Count Five, Plaintiff brings a claim for Promissory Estoppel, relating to the alleged promise for a trial loan modification in 2009. Count VI alleges "Civil Conspiracy" and seeks attorney's fees and expenses.

Defendants, as part of their Motion to Dismiss, attach various other documents. Defendants attach, as Exhibit A, the Security Deed executed by Plaintiff in 2005 in favor of lender Fremont Investment & Loan. [6-2]. Defendants also attach, as Exhibit B, an Assignment of that Security Deed in 2009 from the Mortgage Electronic Registration System, Inc. ("MERS"), on behalf of Fremont, to Defendant Wells Fargo. [6-3]. In support of a judicial estoppel argument, discussed below, Defendants also attach various bankruptcy petitions filed by Plaintiff in 2009 and 2012. [6-4] [6-5].

## II.   DISCUSSION

### A.   *Legal Standards On A Motion To Dismiss*

Defendants have filed a Motion to Dismiss, arguing that all the claims asserted against them in the Complaint must be dismissed under Rule 12(b)(6) of the Federal

Rules of Civil Procedure for failure to state a claim for relief. When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss," the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

5

'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting FED.
R. CIV. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to
state a plausible claim for relief, because the Plaintiffs are proceeding *pro se* in this
case, the Amended Complaint must be "liberally construed." *Erickson v. Pardus*, 551
U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se*
complaint, however inartfully pleaded, must be held to less stringent standards than
formal pleadings drafted by lawyers." *Id.*; *see also* FED. R. CIV. P. 8(e) ("Pleadings
must be construed so as to do justice"). Even though a *pro se* complaint is held to less
stringent standards than formal pleadings drafted by attorneys, "the Court need not
accept as true legal conclusions or unwarranted factual inferences." *Montgomery v.
Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency
accorded a *pro se* filing excuses a plaintiff from compliance with the threshold
requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Techs.*,
313 F.3d 1295, 1297 (11th Cir. 2002).

As noted above, a court ordinarily cannot consider matters outside the
pleadings when evaluating a motion to dismiss under Rule 12(b)(6), but when a
plaintiff has referred to documents in the complaint and such documents are central
to the plaintiff's claims, a court may consider those documents as part of the

6

pleadings in the case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (holding that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.*; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)[2] ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

which foreclose recovery as a matter of law, dismissal is appropriate." (citation omitted)); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

Here, as part of the papers she filed in state court, Plaintiff attached the 2009 Assignment of the Security Deed from Fremont Investment (via MERS) to Defendant Wells Fargo. Petition [1-1] at 22. Moreover, Defendants have separately attached to their Motion to Dismiss that same document, as well as the original 2005 Security Deed Plaintiff executed in favor of Fremont. Motion to Dismiss [6-2][6-3]. Plaintiff does not oppose Defendants' argument that these documents are central to the allegations in the case, and does not challenge the authenticity of these instruments. The Court agrees that these documents are central and can be considered, as Plaintiff has made specific references to the chain of title as recorded in Fulton Superior Court. Petition [1-1] ¶¶ 24-25.

    B.    *Plaintiff's Claims*

        1.    Injunctive/Declaratory Relief To Prevent Or Set Aside Foreclosure Or Obtain Specific Performance Of A Loan Modification (Counts One–Four)

As described above, the Complaint includes various overlapping Counts seeking to prevent and/or set aside foreclosure on Plaintiff's property, and obtain a

loan modification, on essentially, two grounds: "that there are several breaks in the chain of title recorded in Fulton County, Georgia Records relating to the Plaintiff's real property, and these documents filed on the public record in fairness must be corrected," and that Plaintiff should have been afforded a loan modification, but was wrongfully denied that modification, and this constitutes "unclean hands" barring foreclosure. *See, e.g.,* Petition [1-1] ¶¶ 24-25. These allegations fail to state a claim.

Plaintiff's unexplained allegation as to "breaks in the chain of title" is wholly conclusory and devoid of any factual support whatsoever. Regardless of the *Iqbal* deficiency, however, the allegation fails to state a claim as a matter of law. Plaintiff does not allege that Defendant Wells Fargo lacks possession of the Security Deed. Generally, under Georgia law, such possession is all that is required to empower a creditor to foreclose. *See You v. JP Morgan Chase Bank*, 743 S.E.2d 428, 433 (Ga. 2013) ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."); *Montgomery v. Bank of Am.*, 740 S.E.2d 434, 438 (Ga. 2013). To the extent Plaintiff seeks to impugn a creditor's lawful possession of that Security Deed because of improprieties in its chain of assignments, such challenges have generally been rejected as a matter of Georgia foreclosure law. *Haynes v. McCalla*

*Raymer, LLC*, 793 F.3d 1246, 1251 (11th Cir. 2015) ("In this case, the Haynes are not parties to the assignment they are challenging—it is between MERS and BANA. Georgia courts have previously addressed similar claims and found that the homeowners lacked standing to challenge the assignment.").

In any event, Defendants have attached documentation, which the Court has found eligible for consideration with regard to this Motion to Dismiss, demonstrating that Plaintiff executed a Security Deed in favor of Fremont in 2005, and that Fremont (through MERS) assigned that Deed to Defendant Wells Fargo in 2009. These facts are enough to support Defendant Wells Fargo's ability to foreclose, and Plaintiff alleges no factual matter suggesting otherwise.

As to Plaintiff's desire for a loan modification, she alleges absolutely no law or contractual provision, and the Court is aware of none, entitling her to unilaterally modify her loan. Plaintiff alleges that she was granted a "trial" modification by a non-party, Bank of America, in 2009, but Plaintiff does not argue or allege facts to suggest that this "trial" modification was ever agreed-to on a permanent basis and that a new, binding loan contract was formed.

Courts in this district, and other courts around the country, have consistently rejected breach of contract claims against lenders who fail to modify loans after offering a trial period plan. *See, e.g., Gass v. CitiMortgage, Inc.*, No. 1:11-CV-3713-

RWS-JSA, 2012 WL 3201400, at *8 (Report and Recommendation) (gathering authority), adopted by 2012 WL 3156770. This is because no binding contract is formed when a lender offers to permanently modify a loan in the future, pursuant to undefined terms, upon the successful completion of a trial period of reduced payments. *See id.*; *see also Lonberg v. Freddie MAC*, 2011 WL 838943, at *7 (D. Or. Mar. 4, 2011) ("[E]very court that has reviewed this issue has unanimously agreed that a defendant's failure to provide a permanent loan modification solely on the basis of the existence of a TPP [trial period plan] does not sufficiently state a breach of contract claim."); *see also In re Salvador*, 2011 WL 1833188, at *7 (Bankr. M.D. Ga. May 12, 2011) ("It is clear from the terms of the TPP Agreement that the document is nothing more than an agreement to negotiate further with respect to the terms of a proposed loan modification. The parties did not reach an agreement on all essential terms concerning the proposed loan modification."); *Brown v. Bank of N.Y. Mellon*, 2011 WL 206124, at *3 (W.D. Mich. Jan. 21, 2011); *Grill v. BAC Home Loans Servicing*, 2011 WL 127891, at *3-4 (E.D. Cal. Jan. 14, 2011); *Prasad v. BAC Home Loans Servicing*, 2010 WL 5090331, at *3-4 (E.D. Cal. Dec. 7, 2010); *Jackson v. Ocwen Loan Servicing*, 2010 WL 3294397, at *3 (E.D. Cal. Aug. 20, 2010); *but see Durmic v. J.P. Morgan Chase Bank*, 2010 WL 4825632 (D. Mass. Nov. 24, 2010)

(denying motion to dismiss plaintiffs' breach of contract claim when satisfaction of plaintiffs' trial period plan was not disputed).

Because Plaintiff does not demonstrate a plausible case—or even argue—that the terms of her loan were permanently modified, she has no recourse to this Court simply on the basis that she was allowed to make reduced payments for a temporary period on a trial basis.[3]

### 2.    Promissory Estoppel

The doctrine of promissory estoppel acts to supply the necessary consideration, which would otherwise be lacking, by the reliance of the promisee on the promise of another. *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356,

---

[3] Defendants also argue that Plaintiff should be barred from seeking equitable relief because she has not tendered the amount due on the loan. *See Everson v. Franklin Disc. Co.*, 285 S.E.2d 530, 533 (Ga. 1982); *Smith v. Citizens & S. Fin. Corp*, 268 S.E.2d 157, 159 (Ga. 1980); *Mickel v. Pickett*, 247 S.E.2d 82, 87 (Ga. Ct. App. 1978); *Wright v. Intercnty. Props., Ltd.*, 233 S.E.2d 160, 161 (Ga. 1977); O.C.G.A. § 23-1-10 ("He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action."). At least at this juncture, however, the Court does not find it proper to rest on this ground for dismissal. Arguably, Plaintiff has at least indicated a willingness to pay the amount that she asserts she is legally obligated to pay, that is, the modified mortgage amount. Indeed, Plaintiff disputes that she is even in default, which, according to her, she is only deemed to be in because Defendants have wrongfully not accepted her modified payments. In these circumstances, it is not clear that Plaintiff should have to pay any tender at this juncture and the Court, rather, elects to consider the allegations on the merits.

12

1371 (N.D. Ga. 2006); *see also Everts v. Century Supply Corp.*, 590 S.E.2d 199, 202 (Ga. Ct. App. 2003). When there is a definite contract, however, in which consideration is present and the terms are bargained for, promissory estoppel is not available as a remedy. *See Am. Casual Dining,* 426 F. Supp. 2d at 1371; *see also Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1326 (11th Cir. 2005) (citing *Bank of Dade v. Reeves*, 354 S.E.2d 131 (Ga. 1987)). Thus, a plaintiff may plead promissory estoppel or breach of contract claims in the alternative. *Am. Casual Dining,* 426 F. Supp. 2d at 1371.

Plaintiff's claims for promissory estoppel here fail on multiple grounds. First, Plaintiff's repayment obligations vis-à-vis her mortgage loan, and the rights of her secured creditor vis-à-vis the property, are matters governed by contracts, that is, a Security Deed and/or a Promissory Note. Promises made outside the four corners of these binding contracts are not grounds for a cause of action. More generally, Plaintiff simply alleges that she was granted a trial modification. As explained at length above, a trial modification is not a binding promise of any permanent relief.

3.      Fraud/ Civil Conspiracy

Plaintiff also alleges "civil conspiracy," which appears to be premised on the notion that Defendants and others conspired to "defraud" her in certain ways. Petition [1-1] ¶ 33. While this claim itself is entirely conclusory, based on the entirety of the Complaint, it appears that Plaintiff is arguing that Defendants conspired to "defraud" her by putting her into a predatory and subprime mortgage she could not afford, by denying her a modification, and/or by otherwise foreclosing wrongfully despite breaks in the chain of title.

Under Georgia law, to be actionable as fraud, misrepresentations must be acted upon by the person allegedly defrauded. O.C.G.A. § 23-2-52. The elements of civil fraud and fraudulent misrepresentation are: (1) a false representation by defendants; (2) scienter, (3) an intention to induce plaintiff to act or refrain from acting in reliance upon the representations; (4) plaintiff's justifiable reliance on the false statements; and (5) damages resulting from such reliance. *See Grand Master Contracting, L.L.C. v. Lincoln Apartment Mgmt. Ltd. P'ship*, 724 S.E.2d 456, 458 (Ga. Ct. App. 2012); *Hicks v. Sumter Bank & Trust Co.*, 604 S.E.2d 594, 596 (Ga. Ct. App. 2004).

Here, whether subject to the heightened pleading requirements of Rule 9(b) or not, Plaintiff's claim for civil conspiracy is fatally deficient. At the threshold, Plaintiff includes absolutely no factual specifics to explain what any particular Defendant or

14

other conspirator did to "defraud" or otherwise conspire against her. To the extent this claim is premised on the notion that Defendant Fremont extended to Plaintiff a mortgage on "subprime" or even "predatory" terms, that fails on numerous levels. First, Fremont is not a party in this case, and Plaintiff does not allege any facts suggesting that Fremont loaned Plaintiff money in cahoots with any current Defendant. Second, more basically, Plaintiff does not allege that she was somehow misled about the terms of the loan that she herself apparently applied for and agreed to. "Subprime" loans back in 2009 may not have been good policy on any number of levels, but that does not mean that an individual borrower who agreed to a subprime rate back in 2009 was necessarily "defrauded." Indeed, Plaintiff does not allege that she was told any lie or other material misstatement of fact upon which she relied. To the contrary, the record includes documents that she apparently signed that include the onerous interest rate and other terms that Plaintiff now wishes to avoid. That Plaintiff agreed to a bad deal does not establish fraud or any other common law tort.[4]

--------

[4] Defendants also argue that all of Plaintiff's claims should be dismissed as a matter of judicial estoppel, because Plaintiff did not disclose any claim or potential claim against any of the Defendants in either of two bankruptcy petitions she brought in 2009 and 2012. Judicial estoppel is an equitable doctrine designed "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Me.*, 532 U.S. 742, 749-50 (2001). As the Eleventh Circuit explained in *Burnes v. Pemco Aeroplex, Inc.*, judicial estoppel precludes a party from "asserting a claim in a legal

## III.   CONCLUSION AND RECOMMENDATION

Thus, it is **RECOMMENDED** that the Motion to Dismiss [6] be **GRANTED** and that this case be **DISMISSED**. As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 30th day of November, 2015.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes,* 291 F.3d 1282, 1285 (11th Cir. 2002) (citations omitted). To determine whether a court should apply the doctrine of judicial estoppel to a particular case, the Eleventh Circuit has outlined two non-exhaustive factors: (1) whether an inconsistent position was made under oath in a prior proceeding, and (2) whether the inconsistent statements were made knowingly and with intent to mislead. *Id.* Here, Plaintiff does not oppose Defendants' assertion of judicial estoppel, or any other arguments for dismissal for that matter. Nevertheless, the Court finds it unnecessary to reach the question of estoppel, which would otherwise require finding that Plaintiff knew of the existence of her instant claims at the time of the prior bankruptcy proceedings and deliberately concealed those claims. There are sufficient deficiencies as to the merits of Plaintiff's claims that obviate any need to consider judicial estoppel.